CLERK'S OFFICE U.S. DIST. C...
AT ROANOKE, VA
FILED

SEP 20 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE (3) APPLE IPHONES, CURRENTLY LOCATED IN THE ROANOKE POLICE DEPARTMENT EVIDENCE VAULT | Case No. 7:19mj119 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Nicholas Davis, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—three (3) Apple iPhones, described in Attachment A—which currently are in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses in violation of Title 18 and Title 21 of the United States Code.

3. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, and have been so employed since 12/29/2013. Prior to this, I graduated from Lehigh University. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. During this time I have received training in various aspects of law enforcement, in particular narcotics and firearms

investigations. I have conducted and participated in numerous narcotics-related investigations including surveillance, search and seizure, effecting arrests, and implementing the use of Confidential Sources (CS). As a result of my training and experience as an ATF Special Agent I am familiar with Federal criminal laws, specifically Title 21 USC 841(a)(1) and Title 18 USC 922(g)(1).

4. The facts in this affidavit come from my training and experience as well as information obtained from other law enforcement officers. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of violations of Title 21, United States Code, Section 841(a), possession with the intent to distribute and distribution of a controlled substance, and Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute a controlled substance, have been committed and are being committed by Antonio Lemar WADDELL. There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched are three (3) Apple iPhones. These devices are currently located in the Roanoke Police Department (RPD) Evidence Vault, located in the Western District of Virginia.

## PROBABLE CAUSE

8. On or about July 26, 2019, members of the Roanoke Valley Regional Drug Unit (RDU) used a confidential source (CS) to order a quantity of heroin from a person known as "Ville" and identified by the CS as Antonio Lemar WADDELL. Under police observation, the CS made contact via text message to WADDELL at the phone number (540) 892-3887 to order a quantity of heroin and cocaine.

9. The CS was advised by return text message from the (540) 892-3887 number to contact "Jarrod" for the purchase, at the phone number (540) 795-0977. Investigators identified "Jarrod" as Jarod Sylvester ALSTON, based on ALSTON's presence at prior controlled purchases from WADDELL.

10. During the set-up call with the CS, ALSTON advised the CS from the (540) 795-0977 number that he would be at "the house" in approximately five minutes.

11. "The house" to which ALSTON referred was 1011 Crescent Street NW, in the City of Roanoke. The CS drove to the Crescent Street address under surveillance and entered the residence. Once inside, the CS observed ALSTON reach above a cabinet to retrieve the suspected narcotics. The CS then purchased from ALSTON approximately 3 grams of heroin and 2.4 grams of cocaine, both of which field-tested positively using a Tru-Narc system.[1] Standard

---

[1] A Tru-Narc unit is designed for use by law enforcement to identify controlled substances, including in some instances drug purity, without the necessity of field-testing procedures that require investigators to come into closer

3

controls were in place for the transaction, to include the use of pre-recorded currency, audio-video recording equipment and active search and surveillance procedures. Upon review of the audio-video recording, investigators were able to positively identify ALSTON as the seller of the drugs.

12. Investigators conducted a second controlled purchase of narcotics from ALSTON and WADDELL on or about August 9, 2019. On that date, a confidential source (CS) placed an order to WADDELL at (540) 892-3887 for a quantity of heroin and cocaine. WADDELL referred the CS to ALSTON for the purchase, advising that ALSTON was at the Crescent Street residence, and further advising that they would have the "slow" and the "soft."[2] Based on WADDELL's instructions, the CS made contact with ALSTON by phone, through Facebook, to complete the order.

13. The CS proceeded to 1011 Crescent Street for the purchase. Standard controls were in place, including the use of pre-recorded currency, audio-video recording equipment and procedures for searching the CS and the CS's vehicle before and after the purchase. Inside the residence, the CS acquired approximately 4.3 grams of heroin, which also tested positively using a Tru-Narc system. The CS advised that ALSTON was alone in the residence during the purchase and retrieved the heroin from the kitchen.

---

personal contact with the drugs. Law enforcement agencies increasingly purchase and use this newer technology to guard against the dangers of handling substances such as fentanyl.

[2] Your affiant knows from training and experience that "slow" is a slang term for heroin, while "soft" is a slang term for cocaine.

4

14. On or about August 16, 2019 (RDU) used a confidential source (CS) to order a quantity of heroin directly from WADDELL. Under police observation, the CS made contact with WADDELL via text message to the phone number (540) 892-3887 to order a quantity of heroin and cocaine. WADDELL designated "Crescent" as the meeting location, signifying 1011 Crescent Street. As before, standard controls were in place for the transaction, to include the use audio-video recording equipment, pre-recorded funds and active search and surveillance. At the residence, the CS purchased from WADDELL approximately 2.3 grams of a substance that field-tested positively for the presence of heroin, including fentanyl compound or methamphetamine, using a Tru-Narc system, and approximately 2.1 grams of a substance that field-tested positively for the presence of cocaine using a Tru-Narc system.

15. On August 28, 2019, investigators executed a warrant to search the 1011 Crescent Street residence, based on the joint distribution activities of ALSTON and WADDELL at that location. Inside the residence, investigators located and seized approximately 403 grams of methamphetamine; 125 grams of heroin, and approximately 113 grams of a mixture and substance containing suspected fentanyl, all of which field-tested positively using a Tru-Narc system.

16. On the same date, investigators executed a warrant to search WADDELL's residence located at 421 Elm Street, Apt. 4, in Roanoke. From the residence, they seized approximately $38,700 in U.S. currency. WADDELL was home during execution of the warrant and claimed that he obtained the currency from a settlement or other legal proceeding related to a family member; however, within the stack of currency investigators located approximately $500 of pre-recorded currency linked to a controlled purchase from ALSTON and a separate controlled purchase from WADDELL. Both of the purchases associated with the currency took place in the first two weeks of August 2019, utilizing telephone communications in the form of text messages and phone calls.

17. Also seized pursuant to the search warrant were the three (3) devices for which this affidavit is being submitted, one of which was sitting on the bed in WADDELL's residence, and the other two (2) which were located on a night stand next to the bed. Located within the same room was a Virginia ID card with the name Antonio Lemar WADDELL.

18. Based on the above, probable cause exists to believe that conspirators in this case, including WADDELL, utilized their mobile devices to engage in drug-related communications, and that the mobile devices seized from WADDELL's residence on the date of the residential search, as more particularly described in Attachment A, will contain information constituting records, instrumentalities, or evidence of a crime, to wit, violation of Title 21, United States Code, Sections 841(a)(1), possession with intent to distribute a controlled substance, and Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute a controlled substance. I respectfully request that a search warrant be issued for these devices for examination and seizure of stored content related to drug trafficking and/or distribution, and content tending to prove relationships between co-conspirators or any acts furthering a drug conspiracy, including:

   a. Text messages (incoming and outgoing);
   b. Emails (incoming and outgoing);
   c. Recent calls (incoming and outgoing);
   d. Missed calls;
   e. Contact lists;
   f. Digital codes;
   g. GPS and other location information;
   h. Appointment calendars;
   i. Photographs, videos and other electronic images and media.

19. Your affiant knows from training and experience, from participation in this and other drug trafficking investigations, and from my discussions with other agents and investigators,

6

that individuals who desire to commit drug crimes communicate through the use of cellular telephones and other electronic means. Your affiant also knows that it is not uncommon for narcotics distributors to own/possess/utilize multiple mobile devices to manage their drug operations and avoid detection by law enforcement. Specifically, I know that:

   a. Individuals involved in illegal narcotics distribution commonly maintain cellular telephones, electronic mobile devices, pagers and other communication devices to further their narcotics trafficking activities. Narcotics traffickers often keep several of these devices simultaneously and use them to relay a variety of illicit information, including, telephone numbers of co-conspirators, digital codes to identify the caller, digital codes to indicate the location of a meeting place, the amount of a controlled substance or its purchase price, or other information designed to facilitate criminal activity;

   b. Individuals involved in illegal narcotics distribution commonly maintain in electronic storage media names, telephone numbers, recorded messages, photographs, and other items of information concerning themselves and individuals associated with their criminal activities, including cellular telephones, electronic mobile devices, digital cameras and recorders, memory storage cards, home computers, and computer storage disks;

   c. Individuals involved in illegal narcotics distribution commonly take, or cause to be taken, photographs and videos of themselves, their associates, their property, their drugs, and/or their firearms. These photographs and videos are commonly stored in electronic storage media, including cellular camera telephones, electronic mobile

7

Case 7:19-mj-00119-RSB   Document 1-1   Filed 09/20/19   Page 7 of 9   Pageid#: 8

devices, digital cameras, memory cards, home computers, and computer storage disks;

d. Individuals involved in illegal narcotics distribution commonly maintain records in various forms of electronic or magnetic media, and in computers. Based upon my knowledge of electronic devices and also on information derived from ATF forensic computer specialists, property search retrieval, analysis, documentation and authentication of all such electronically stored computer data requires laboratory analysis by a qualified computer specialist.

## TECHNICAL TERMS

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit examination of the mobile device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the mobile device described in Attachment A to seek the items and evidence described in Attachment B.

8

Respectfully submitted,

_____
Nicholas Davis
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn before me
on September 20, 2019:

_____
ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE

9